# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JOHN DOE, et al., | 3:03-CV-0604-BES (VPC) |
| Plaintiffs, | |
| vs. | **REPORT AND RECOMMENDATION** |
| | **OF U.S. MAGISTRATE JUDGE** |
| WASHOE COUNTY, et al., | |
| Defendants. | |

This report and recommendation is made to the Honorable Brian E. Sandoval, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is defendants' motion to enforce settlement agreement (#117). Plaintiffs opposed (#122), and they also filed numerous notices and affidavits, which the court construes as offered in support of their opposition to defendants' motion (#s32, 33, 34,[1] 105, 108, 110, 111, 113 & 114). Defendants replied (#123). As more fully set forth below, this court recommends that defendants' motion be granted.

### I. Procedural History

This proceeding concerns two cases that were originally filed in the Second Judicial District Court of the State of Nevada in and for the County of Washoe, but were removed to the District Court on November 7, 2003. The minor plaintiffs, John Doe[2] and John Smith, generally allege that they were

---

[1] Despite the fact that the District Court entered an order consolidating the two cases which are the subject of this report and recommendation, on August 30, 2004 (#18), Mr. King persists in filing papers in Case No. 3:03-CV-0603-PMP-VPC. Mr. King is admonished that he shall file all future papers in Case No. 3:03-CV-00604-BES-VPC.

[2] Since the filing of this complaint, John Doe has reached the age of majority.

assaulted in separate incidents while in custody at Wittenberg Hall. Their parents are also named as plaintiffs. The John Doe complaint was filed as CV-N-03-604-HDM (VPC), and the John Smith complaint was filed as CV-N-03-603-HDM-VPC. As will become evident, it is noteworthy that from the inception of his case, John Doe and his parents were represented by Carter King, Esq. and David Houston, Esq. *See* #2, Ex A. Jeffrey Dickerson, Esq. later joined Messrs. King and Houston in the representation of John Doe and his parents upon the filing of the amended complaint in March 2004 (#11). John Smith and his parents were originally represented by Mr. King, and he was later joined by Mr. Houston and Mr. Dickerson, Esq. upon the filing of the amended complaint in March 2004 (#13).[3] The cases were consolidated on August 30, 2004 (#18).

Although discovery plans and scheduling orders were entered early in these cases, numerous extensions were granted:

|   *John Doe: 03-604*   |   | *John Smith: 03-603* |   |
|---|---|---|---|
| 1/22/04 | #7 | 1/22/04 | #9 |
| 3/17/04 | #12 | 3/17/04 | #14 |
| 7/26/04 | #15 | 7/26/04 | #18 |
| 10/20/04 | #19 | 10/20/04 | #24 |
| 8/22/05 | #23 |   |   |

These extensions were driven, in part, by the volume of documents subject to discovery and the sensitive nature of the discovery sought to be produced, which involved minor children in the defendants' custody at Wittenburg Hall. The parties obtained a state court order governing the production of otherwise confidential information (#19). However, given the pattern of repeated requests for extensions of discovery, this court held the first of many discovery status hearings on July 5, 2005, one year and eighteen months after the complaints were filed (#21). At the July 5th hearing, the court ordered counsel to meet, confer and propose a final, realistic discovery plan and scheduling order, including proposed dates for depositions, disclosure of expert and rebuttal witnesses, additional documents to be reviewed by plaintiffs, and any additional written discovery to be propounded (#21). The parties did so, and the court approved a final plan at the August 17, 2005 discovery status hearing (#23). To more

---

[3]Case no. 3:03-CV-0603-PMP (VPC).

2

1  efficiently manage future discovery disputes, the court also initiated monthly discovery status hearings
2  to insure that the parties would indeed complete discovery by the final deadline of April 28, 2006 (#23),
3  two years and five months after the cases were filed.

4       The very lengthy chronology of events related to discovery which now follows is relevant to the
5  motion before the court, since the conduct of Carter King, Esq., co-counsel for plaintiffs, is central to
6  the issues raised by the parties concerning the disputed settlement of this case.

7           1.    <u>September 26, 2005 Discovery Status Hearing (#24)</u>

8       The first difficulty arose in September 2005. At the September 26, 2005 discovery status hearing,
9  Mr. King was present on behalf of plaintiffs, and the plaintiffs' private investigator testified concerning
10 his review of case files from Wittenberg and juveniles whom plaintiffs believe may be potential witnesses
11 and/or plaintiffs (#24). The court set an October 10, 2005 deadline for the investigator to provide his
12 report to plaintiffs' counsel and further ordered that plaintiffs' counsel would then serve on defendants'
13 counsel a request for production of documents by October 14, 2005. *Id.* However, rather than serve the
14 document production request on defendants' counsel, as ordered by the court, Mr. King filed the
15 document with the court (#25) so the court would "know why the individuals listed above are important
16 witnesses in this case . . . ." *Id.* The document listed the first and last names of forty-eight juvenile
17 witnesses and many other juveniles, and to the extent it would have been proper to file any discovery
18 with the court, it was not filed under seal (#27). The court instructed the Clerk to remove the imaged
19 copy from the court's PACER system, and ordered the requests for production of documents removed
20 from the public file and to be filed under seal. *Id.* Mr. King was admonished to be very careful in filing
21 future documents with the court to preserve the privacy of minors, and he was warned that failure to do
22 so in the future could subject him to sanctions. *Id.*

23          2.    <u>February 8, 2006 Discovery States Conference (#41)</u>

24      At the February 8, 2006 hearing, Messrs. King, Dickerson, and Houston were present on behalf
25 of plaintiffs, and the court addressed the parties regarding the status of this case and plaintiffs' motion
26 to compel (#28). The court had earlier ordered the parties to file simultaneous briefs no later than
27 January 9, 2006 regarding the confidentiality of juvenile records (#35). While defendants complied with
28

3

the court's order, plaintiffs did not. Instead, they filed a document styled, "Discovery Brief Regarding Legal Standards for Liability under § 1983 Claims in Support of Plaintiff's Discovery"(#40). Mr. King advised that it was he who had failed to timely file plaintiffs' brief, and the court ordered the discovery brief stricken (#41). On December 2, 2005, the court also ordered plaintiffs to submit for *in camera* review of disputed documents no later than January 9, 2006, and Mr. King once again failed to comply with the earlier order. *Id.* The court admonished Mr. King to comply with all future orders of the court. *Id.* The court expressly ordered Mr. Houston to review the juvenile records to decide what further discovery might be required. *Id.*

### 3. *March 2, 2006 Minute Order (#45)*

On February 28, 2006, Mr. King filed a supplement to a notice of appearance of expert witness at time of trial, notwithstanding that LR 26-8 provides that discovery-related documents are not be filed with the court (#45). Attached to the supplement were many documents containing sensitive juvenile records, including the names and ages of juveniles. The document was not filed under seal, contrary to the court's prior admonition to Mr. King, and the court ordered the document stricken. *Id.* The court ordered that at the March 2006 discovery status hearing, that Mr. King show cause why he failed to abide by this court's earlier order (#27) to file sensitive juvenile records under seal in this case and indicated that sanctions may be imposed (#45). The court ordered plaintiffs' supplement to notice of appearance of expert witness at trial (#44) to be stricken and deleted. In a separate minute order, the court directed that if Mr. King wished to file a response to the order to show cause, he had leave to do so by no later than 5:00 p.m. on Friday, March 3, 2006 (#46).

### 4. *March 6, 2006 Discovery Status Hearing (#48)*

At this hearing, the court considered several pending discovery matters and then addressed the issue of Mr. King's conduct (#48). Mr. King's co-counsel, Mr. Houston, was also present at this hearing. The court recounted in great detail the chronology of problems that had arisen as a result of Mr. King's violation of court orders, his disregard of the Local Rules of Practice, and the court further noted that contrary to the 5:00 p.m. deadline set for Mr. King to respond to the order to show cause on March 3, 2006, Mr. King sent his response via facsimile to the court on Friday, March 3, 2006, at 7:01 p.m. (#48).

Upon hearing from Mr. King, the court sanctioned Mr. King pursuant to Local Rule IA 4-1(d) as follows:

> Mr. King was ordered not file any further papers with this court on behalf of the plaintiffs until the following occurred:
>
> 1) Mr. King was required to attend case management electronic case filing (CM/ECF) training. He was ordered to contact Lia Griffin of the Clerk's Office to obtain a date for such training.
>
> 2) Mr. King was ordered to obtain a written certification from the trainer that he successfully completed the CM/ECF training.
>
> 3) Mr. King was ordered to review this court's Local Rules of Practice, most particularly Part IA, the introductory rules; Part B, the rules governing magistrate judges; and Part II, the local rules as they relate to civil practice.
>
> 4) Mr. King was ordered to deliver to the court's chambers a notice that he had complied with the court's order by attaching a certification of completion of the CM/ECF training and an affidavit attesting to the fact that he had not only read, but understood the Local Rules.
>
> 5) To the extent further papers were required to be filed by plaintiffs during the time it took Mr. King to comply with this order, Mr. King's co-counsel were deemed responsible for filing all documents, and no documents could bear Mr. King's signature. In the event Mr. King signed any documents filed with the court prior to compliance with the court's order, they would be stricken.
>
> 6) The court indicated that it would not impose a deadline for compliance with this order, but admonished Mr. King that if he elected to participate as plaintiffs' counsel at the next scheduled hearing without having fully complied with this order, the court would consider suspending Mr. King from practicing in the United States District Court for the District of Nevada.

*See* minute order (#48).

   5. <u>March 17, 2006 Minute Order (#49)</u>

Eleven days after this court sanctioned Mr. King and expressly ordered him not to sign any papers to be filed with this court until he had complied with the March 6, 2006 order (#48), the court received, via hand delivery, a stipulation and order to extend time to file a discovery status report (#49). Mr. King had not complied with the sanction order; therefore, the court ordered the stipulation and order

5

stricken and once again ordered Mr. King to show cause why he should not be sanctioned further for violating the court's orders (#49).

    6. <u>March 21, 2006 Hearing (#53)</u>

The court set a discovery status conference on March 21, 2006 for 9:00 a.m. Mr. Dickerson was present on behalf of plaintiffs, but Mr. King was not present (#53), and so the court postponed commencing the hearing to await his arrival. At 9:07 a.m, the court began the hearing without Mr. King and recited the circumstances of the court's most recent order to show cause regarding Mr. King. Mr. King appeared in court at 9:08 a.m.

Upon hearing from Mr. King, the court sanctioned Mr. King $200.00 for signing the March 16, 2006 stipulation in violation of this court's order (#53). The court further ordered Mr. King to comply fully with the requirements of the March 6, 2006 sanction order (#48) no later than Friday, March 31, 2006. The court further stated, *"In the event Mr. King fails to fully comply with the terms of this Court's order, he shall not be allowed to make any appearances as counsel in this action, either through papers filed with the Clerk of the Court or in person, until further order of this Court"* (#53) (emphasis supplied).

At this hearing the court also noted that plaintiffs had filed electronically two unsigned motions and upon plaintiffs' request, those motions were withdrawn. *Id.* The parties also indicated that they wished to set this matter for a settlement conference and were directed to contact the court's deputy clerk to select a date. *Id.* Finally, the court ordered that Mr. Houston, plaintiffs' co-counsel, be present at the next discovery status conference. *Id.*

    7. <u>March 31, 2006 Minute Order (#59)</u>

The parties stipulated (#57) to allow Mr. King until April 6, 2006, to comply with the court's March 21, 2006 order (#59). However, the minute order expressly stated that "notwithstanding the extension, [Mr. King] cannot appear in court or file or file <u>any</u> paper until he files his notice of compliance as ordered (#53)." (emphasis in the original). The court further stated that this order did not prevent Mr. King from representing plaintiffs in conferences, depositions and other matters outside the court. *Id.*

6

        8.      <u>April 12, 2006 Minute Order (#65)</u>

On April 6, 2006, Mr. King filed a paper styled as "petition for acknowledgment of compliance; notice of partial compliance; registration for the electronic filing court; and request for order granting re-admission" (#60). However, Mr. King failed to comply with the court's orders (#s 48 and 53) as follows: 1) he failed to obtain written certification from the CM/ECF trainer certifying that he had successfully completed training; 2) he disobeyed two prior orders to file <u>no</u> papers with the Clerk, but to hand-deliver his notice of compliance directly to the court's chambers; and 3) Mr. King failed to provide the affidavit attesting that he had read and understood the Local Rules of Practice (#65). The court ordered the petition (#60) stricken.

In addition to the above-referenced petition, Mr. King also filed another document in violation of the court's orders, a motion styled, "status report, a motion to compel, a request for discovery hearing with District Judge, a request for settlement conference, and a motion for summary judgment" (#61). The court ordered this document stricken on a variety of grounds, which are enumerated in this court's minute order (#65). The court directed that if plaintiffs wished to re-file all or part of this paper, Mr. King's co-counsel, Messrs. Houston and/or Dickerson must sign it. *Id.* The court further stated that one or both of Mr. King's co-counsel were required to file "*all future motions, pleadings or papers,* pursuant to the requirements of Fed.R.Civ.P. 11(a) and (b)." *Id.* (Emphasis in the original). The court went on to state, "Plaintiffs' co-counsel are all cautioned that they shall be held accountable for all future filings in the proceeding, including those bearing Mr. King's signature, in the event he is reinstated and allowed to appear in this action." *Id.*

        9.      <u>April 19, 2006 Minute Order (#67)</u>

Mr. King once again attempted to comply with this court's March 6, March, 21, and April 12, 2006 orders (#s 48, 53, and 65). However, his efforts fell short, as he failed to obtain the required written certification from the CM/ECF trainer that he had successfully completed training. Instead, Mr. King provided a certification bearing only his signature (#67). Given Mr. King's repeated violations of this court's orders, the court went on to state:

7

> IT IS FURTHER ORDERED that until such time as Mr. King complies with the clear dictates of this court's orders (#s 48, 53, and 65) and delivers to the court a notice of compliance together with a *written certification from the CM/ECF trainer* certifying that he has successfully completed the case management electronic case filing (CM/ECF) training, he is prohibited from filing *any* papers with the Clerk of the Court or in making *any* appearances on behalf of the plaintiffs until this court issues an order reinstating Mr. King to appear as plaintiffs' co-counsel in this action.

*Id.* (Emphasis in the original).

### 10. *April 24, 2006 Status Conference (#71)*

Mr. Houston was present on behalf of plaintiffs at this hearing, and pursuant to the court's practice with discovery status conferences, the parties were directed to file discovery status reports with the court in advance of the hearing. Defendant duly filed its report (#68), as did plaintiffs (#69). However, plaintiffs' "status report" was not a status report at all; rather, it was the identical motion that plaintiffs filed (#52) and later withdrew at the March 21, 2006 hearing, as well as the identical discovery status report filed April 7, 2006 (#61), which was also stricken (#65). However, this time, the document was purportedly signed by Mr. Houston. Mr. Houston represented to the court at the hearing that Mr. King asked Mr. Houston's permission to file this document through Mr. Houston's office. Mr. Houston was away from his office on vacation at the time, and understood the document to be approximately nineteen pages; therefore, he was unable to review it via telephone. While the document bore Mr. Houston's signature, he did not prepare it or review it, and instead, allowed Mr. King to use Mr. Houston's office to file the document electronically on behalf of the plaintiffs.

The court read into the record the express terms of its April 12, 2006 minute order (#65) which directed that any papers plaintiffs filed with the court in this action be signed by Mr. Houston and/or Mr. Dickerson pursuant to Fed.R.Civ.P. 11(a) and (b). The court ordered plaintiffs' discovery status report (#69) stricken and denied Mr. Houston's oral motion to refile it (#71).

The court also had plaintiffs' settlement conference statement stricken, as it did not comply with the order scheduling settlement conference. *Id.* Plaintiffs' counsel was admonished to read the order scheduling settlement conference carefully and to hand-deliver to chambers their settlement conference statement no later that the close of business on Tuesday, April 25, 2006. *Id.* Finally, the court ordered

that in all future papers filed in this action on behalf of plaintiffs, Mr. Dickerson and Mr. Houston shall attach an affidavit expressly stating that either or both has reviewed the filing and has determined, in accordance with Fed.R.Civ.P. 11 (a) and (b), that to this best of their own *personal* knowledge, information and belief, formed after *reasonable inquiry,* that the paper follows the dictates of Rule 11. *Id.* The court admonished counsel – again – that failure to abide by Rule 11 may subject counsel to sanctions. *Id.* (emphasis in the original).

11. *The April 28, 2006 Settlement Conference*

Notwithstanding the many admonitions to Mr. King that he could only appear in this action on behalf of plaintiffs if he complied with the court's sanction orders, Mr. King did not do so. Rather, on the eve of the April 28, 2006 settlement conference, Mr. King had delivered to chambers a document regarding some medical records with an attachment, but with no signature. The certificate of service indicated the document had also been served on Mr. King's co-counsel and defendants' counsel.

The settlement conference in this proceeding was scheduled to begin at 9:00 a.m. Messrs. Houston and Dickerson were present at 9:00 a.m., but the plaintiffs were not. After court staff and plaintiffs' co-counsel made several calls to Mr. King's office, it was learned that the plaintiffs were waiting for Mr. King at his office. The plaintiffs were directed to proceed to the courthouse without Mr. King, which they did. Mr. King later telephoned the court's chambers to advise that he had overslept. Once the plaintiffs arrived, the court commenced the settlement conference at 9:10 a.m. (#75).

At 10:06 a.m., the court was advised that Mr. King had arrived at the courthouse, and the court took a brief recess for a hearing with counsel in the courtroom (#75). The court then addressed Mr. King and recounted Mr. King's repeated failures to comply with court orders, and most particularly, his repeated failure to obtain permission to appear on behalf of the plaintiffs in this action. Sealed Transcript of April 28, 2006, #126, page 2:11-3:5. The court advised that it had been awaiting Mr. King's certification that he had completed CM/ECF training, but since Mr. King had not provided it, the court would not allow Mr. King to appear at the settlement conference on behalf of plaintiffs. *Id.* at 3:6-11. Mr. King protested that he had, in fact, delivered the appropriate papers to the court, but the

9

1   court advised Mr. King of the documents received in chambers the prior afternoon, which had nothing
2   whatsoever to do with compliance with the court's sanction orders concerning Mr. King. *Id.* at 3:12-4:1.
3         The court advised Mr. King that his conduct in this case was beyond the pale, and that the court
4   would not allow this conduct to continue. The court admonished Mr. King to figure out what he needs
5   to do to practice law in federal court and excused Mr. King from the proceeding, advised him that he
6   was not allowed to participate in the settlement conference, and directed defendants' counsel and Mr.
7   King's co-counsel to reconvene to the conference room to resume settlement discussions. *Id.* at 4:2-21.

        12.    <u>The Settlement</u>

9         The parties and counsel engaged in settlement discussions for the balance of the day and worked
10  through the lunch hour. During the lunch hour while plaintiffs were convened in private caucus, Jane
11  Doe left the settlement conference (#111), but Mr. Dickerson advised that court that she had given
12  Messrs. Dickerson and Houston complete settlement authority to settle the case on her behalf. The
13  parties and counsel continued settlement discussions, and at approximately at 4:00 p.m., Jane Smith also
14  left the settlement conference (#34).[4] Once again, the court sought and received Mr. Dickerson's
15  assurance that Ms. Smith had given him fill authority to settle the case. The parties continued their
16  negotiations, and at approximately 5:45 p.m., the parties reached a settlement agreement. As is this
17  court's practice, the parties adjourned to the courtroom where the terms of the settlement were placed
18  on the record. (#75, Sealed Transcript #126).
19        The court spent thirty minutes with the parties and counsel outlining the terms of the settlement
20  and resolving questions that had arisen. (#126) The court advised those present that the settlement
21  terms would be place on the record, but that if the parties or counsel had questions, required
22  clarification, or wished a recess to confer with counsel, they could do so. *Id.* at 5:6-21. The court
23  explained that it would state its understanding of the terms of the settlement and then ask the parties
24  and counsel if they understood and agreed to the settlement. *Id.* at 5:6-6:6. The court indicated that
25  an essential term of the settlement was that the parties would have a binding settlement agreement that

---

27      [4]Case no. 3:03-CV-0603-PMP (VPC).

1  day and that even if the parties had second thoughts in the future, if they agreed to the settlement today,
2  they were bound. *Id.* at 5:14-21.  Since Washoe County was a defendant, the court explained in detail
3  the protocol for obtaining final settlement authority from the Washoe County Commission at the May
4  2006 County Commission meeting, but the court once again stressed that this delay did not mean that
5  the parties could later renege on the settlement agreement. *Id.* at 5:22-6:6.  The admonition to all parties
6  that the stated agreement in court that afternoon was indeed binding was repeated at least one more
7  time during the proceeding.  *Id*. at 8:9-10.  After the court placed the settlement terms on the record,
8  the parties discussed some questions that plaintiffs had, and those were resolved.  *Id.* at 11:5-16:7.

9        The parties and their counsel were then canvassed concerning whether they understood and
10  agreed to the terms of the settlement.  *Id.* at 15:25-19:21.  The fathers of the plaintiffs both
11  acknowledged that they understood and agreed to the terms, as did the plaintiff, John Doe, who is no
12  longer a minor.  *Id.* at 18:8-16.  The court then confirmed on the record that Mr. Dickerson had full and
13  complete authority to agree to this settlement of behalf of the mothers of Jane Doe and Jane Smith, he
14  indicated to the court that he had such authority, and he agreed to the settlement on behalf of both of
15  them.  *Id.* at 16:8-17:23.  Defendants' counsel and defendants' representatives also signified their
16  agreement to the settlement, and the court explained to the minor plaintiff, John Smith, that although
17  he had participated in the settlement agreement throughout the day, the court was required to obtain
18  consent for settlement from his parents, and he acknowledged that he understood.  *Id.* at 18:17-19:3.

19        A stated term of the settlement agreement was that this court would retain jurisdiction over the
20  settlement until the case ended with the filing of the stipulation dismissing the case. *Id.* at 9:23-10:8.
21  After conferring with counsel, the court set June 16, 2006 as the date the parties would lodge the
22  stipulation and order dismissing this case with prejudice.  *Id.* at 10:9-11. & #75.

23              *13.*     <u>Post-Settlement Events</u>

24        The settlement conference took place on a Friday.  On Monday, May 1, 2006 through
25  Wednesday, May 3, 2006, in violation of the court's prior orders, Mr. Carter filed a series of documents
26  on behalf of some of the plaintiffs reneging on the settlement, seeking to extend discovery, and
27  terminating Messrs. Dickerson and Houston as co-counsel (#s72, 73 , 74, 76, 77, 78, 79, 80, 81, 82, 83,
28  
                                                     11

84, & 85). The court ordered these documents stricken, as Mr. King was not yet reinstated to appear on behalf of plaintiffs (#87). On May 4, 2006, the court reinstated Mr. King to appear, as he had finally complied with this court's earlier ordered (#86).[5] Upon being reinstated, Mr. King filed a second flurry of motions, the court denied certain motions, and further ordered all parties that if they wished to enforce or challenge the settlement agreement, they had leave to file the proper motion no later than July 14, 2006 (#103). Defendants filed a motion to enforce settlement agreement and for sanctions (#117), which is the subject of this report and recommendation.

## II.     Discussion

Courts have inherent authority to enforce settlement agreements between parties in pending cases. *See Metronet Services Corp. V. U.S. West Communications,* 329 F.3d 986, 1013-1014 (9th Cir. 2003) *(cert. granted and judgment vacated on other grounds by Quest Corp. V. Metronet Services Corp.,* 540 U.S. 1147 (2004); *Doi v. Halekulani* Corporation, 276 F.3d 1131, 1136-1138 (9th Cir. 2002); *In re City Equities Anaheim, Ltd.,* 22 F.3d 954, 957 (9th Cir. 1994). An oral agreement made in open court on the record as to the material terms is a binding agreement. *See Doi v. Halekulani Corp.,* 276 F.3d 1131, 1136 (9th Cir. 2002). In *Doi*, the court stated, "An agreement announced on the record becomes binding even if a party has a change of heart after he agreed to its terms but before the terms are reduced to writing." *Id.* at 1138 (citations omitted).

To enforce a settlement agreement, two elements must be satisfied. *Marks-Foreman v. Reporter Pub Co.,* 12 F.Supp 1089, 1092 (S.D.Cal. 1998). First, the settlement agreement must be complete. *Id., citing Maynard v. City of San Jose,* 37 F.3d 1396, 1401 (9th Cir. 1994); *Doi*, 276 F.3d at 1137. Second, the settlement agreement must be the result of an agreement of the parties or their authorized representatives concerning the terms of the settlement. *Marks-Foreman*, 12 F.Supp at 1092, *citing Harrop v. Western Airlines, Inc.,* 550 F.2d 1143, 1144-1145 (9thCir. 1977), *Doi,* 276 F.3d at 1137-1138. Where

---

[5]The minute order indicates that during the afternoon of April 28, 2006, the court received the notice of compliance with affidavit and request for order granting reinstatement as attorney of record (#86).

parties raise objections after the parties agree to a settlement, the court may rightfully deny such objections. *Harrop,* 550 F.2d at 1144.

In *Steffen v. United Airlines, Inc.*, 928 F.2d 1137 (9th Cir. 1991), the court considered whether an attorney has authority to settle a client's claim and stated, "The Nevada Supreme Court has held, and this court has recognized that 'under Nevada law an attorney is presumed to have authority to settle his client's claim.' *Waits v. Weller,* 653 F.2d 1288, 1290 n. 2 (9th Cir. 1981) (citing *State of Nevada v. California Mining Co.,* 15 Nev. 234, 243-44 (1880)."

### III.  Analysis

The court must first consider whether the settlement agreement was complete. *Marks-Foreman, supra,* at 1092. In this case, as in *Doi*, 276 F.3d, 1131, the parties spent several hours in private session and agreed to a settlement of the case. The parties and counsel then reconvened in open court to place the material terms of the agreement into the record. *See* transcript (#126). A critical settlement term was that notwithstanding the Washoe County Commission's anticipated approval of the agreement in May and the preparation of a written agreement, the parties had a binding settlement agreement that day. *Id.* at 5:22-6:6. Every plaintiff was separately and exhaustively canvassed concerning the terms of the settlement, and each agreed to the settlement terms. *Id.* at 16:8-19:21. Counsel and the parties agreed and understood that the settlement agreement was complete, and that remained was approval by the Washoe County Commission, the drafting of the settlement agreement, and payment of the settlement checks to the plaintiffs – all routine post-settlement activities. Thus, the parties had a binding oral agreement. *Doi,* 276 F.3d, 1131 at 1136.

Plaintiffs' only contention concerning whether the settlement agreement is complete is that the parties have not signed an agreement and money has not been exchanged. However, as the Ninth Circuit held in *Doi,* "[a]n agreement does not have to be in writing to be binding. An oral agreement is binding. . . ." *Doi*, 276 F.3d 1131 at 1136. Plaintiffs' argument fails because the express terms of the settlement agreement provided that defendants would obtain Washoe County Commission approval for the agreement at the May Commission meeting, that counsel would draft the settlement agreement and

13

circulate it for signatures, and that upon completion of these tasks, plaintiffs would receive payment pursuant to the agreement. *See* transcript #126 at 5:22-11:4.

The second element the court must consider is whether the settlement was the result of an agreement of the parties or their authorized representatives. *Marks-Foreman, supra,* at 1092. There are six plaintiffs in this consolidated case: Jack and Jane Doe, the mother and father of the plaintiff, John Doe, and Jane and Jim Smith, the mother and father of the minor plaintiff, John Smith. Of six plaintiffs, all but Jim Smith, the father of John Smith, have filed various notices and affidavits in opposition to the settlement agreement.

    A. <u>*John Doe and Jack Doe*</u>

John Doe was a minor at the time of the filing of the complaint, but he is now over the age of majority; therefore, he acted on his own behalf at the settlement conference with the assistance of counsel. Both John Doe and Jack Doe, his father, were present during the entire settlement conference, and when settlement was reached, each assented to the terms of the settlement on the record in open court. "An agreement announced on the record becomes binding even if a party has a change of heart after he agreed to its terms, but before the terms are reduced to writing." *Doi,* 276 F.3d 1131, 1140. *See also Armstrong v. City and County of San Francisco,* 2004 WL 2713068 (N.D.Cal.). John Doe, Jack Doe, and their counsel agreed to the terms of the settlement; therefore, the second element is satisfied as to these plaintiffs.

    B. <u>*Jane Doe and Jane Smith, on her behalf and as a guardian ad litem for John Smith*</u>

Both Jane Smith and Jane Doe left the settlement conference early, notwithstanding the court's order that "all parties and counsel should make arrangements to be present at the settlement conference for the entire day" (#54). Jane Doe left the settlement conference at 12:20 p.m., and provides no explanation for her departure other than she "was not able to return to the second half of the settlement conference" (#111). Jane Smith departed the settlement conference at 4:00 p.m. with no explanation

whatsoever (#34).[6] Both Ms. Doe and Ms. Smith now attest that neither gave Messrs. Houston and Dickerson authority to settle the case prior to leaving the settlement conference (#s34, 111). The history of this proceedings, the conduct of Ms. Doe and Ms. Smith at the settlement conference, and Mr. Dickerson's representations as an officer of the court suggest otherwise.

In *Steffan v. United Airlines, Inc.*, 928 F.2d 1137 (9th Cir. 1991), the plaintiff challenged a settlement agreement on the ground that his attorney had no authority to settle the plaintiff's claim. The Ninth Circuit affirmed and held that "[t]he district court correctly invoked the doctrine of apparent authority to estop the plaintiff from challenging the settlement agreement. This doctrine 'is in effect an estoppel against a [principal] to deny agency when by his conduct he has clothed the agent with apparent authority to act.' *Ellis v. Nelson*, 68 Nev. 410, 418 (1951)." *Id.* The plaintiff had held out his attorney as his lawyer for over one year and gave no notice to the court or the defendant that he had fired him. In holding that the defendant acted reasonably in assuming plaintiff's counsel had authority to settle the case, the court noted that "under Nevada law an attorney is presumed to have authority to settle his client's claim." *Id.* (citations omitted).

As the court has noted, Messrs. Houston and Dickerson have represented plaintiffs in this consolidated action since March 2004, over two years prior to the settlement conference. Mr. Dickerson and Mr. Houston attended numerous hearings, with or without Mr. King, and due to Mr. King's inability to comply with court orders, the court ultimately required either Mr. Houston and Mr. Dickerson to sign papers filed in this case because Mr. King could not be trusted to do so competently. Quite apart from their longstanding representation of the plaintiffs in this action, during the settlement conference none of the plaintiffs, including Ms. Doe and Ms. Smith, expressed a lack of confidence in Messrs. Houston and Dickerson, they never asked that the settlement conference be adjourned on account of Mr. King's absence, and all of the plaintiffs fully participated in settlement discussions while they were present.

When Ms. Doe left the settlement conference, the court immediately canvassed Mr. Dickerson concerning her whereabouts and whether she had given Messrs. Dickerson and Houston complete

---

[6]Case no. 3:03-CV-0603-PMP (VPC).

15

1  settlement authority, and Mr. Dickerson stated that she had.  When Ms. Smith left later in the day, the
2  court once again questioned Mr. Dickerson who confirmed that Ms. Smith had given him complete
3  authority to settle the case.  When settlement was reached and the terms of the settlement were placed
4  on the record, the court canvassed Mr. Dickerson concerning his authority to settle of behalf of Ms. Doe
5  and Ms. Smith, and he represented to the court that they had done so.  *See* transcript #126 at 16:8-
6  17:24.

7  Based upon the holding in *Steffen* and the facts of this case, the court and defendants were fully
8  completely justified in relying on the representations of Mr. Dickerson that he had full and complete
9  authority to settle on behalf of Ms. Doe and Ms. Smith, notwithstanding their sworn statements to the
10 contrary.  The court concludes that Mr. Dickerson had authority to settle this case on behalf of Ms. Doe
11 and Ms. Smith; therefore second element of the *Marks-Foreman* test is satisfied, and the court will not
12 set aside the settlement agreement.[7]

13 Finally, although not a basis for setting aside the settlement agreement, plaintiffs to assert that
14 this court deprived plaintiffs of counsel of their choice – namely, Mr. King – and that he alone had
15 sufficient knowledge and expertise to "competently and adequately do [sic] a Settlement Conference"
16 (#122). The court is constrained to comment. Assuming, *arguendo*, that this is a correct statement, the
17 onus for Mr. King's absence at the settlement conference falls squarely on his shoulders, as the record
18 of his conduct in this case so plainly reveals.  Mr. King was repeatedly warned that his conduct could
19 subject him to sanctions, but he ignored those admonitions. Given Mr. King's repeated disobedience of
20 the court's orders, Mr. King invited additional sanctions, which ultimately resulted in this court
21 prohibiting him from making any appearance, either in person or through written papers, until he
22 complied with earlier sanction orders and obtained an order of re-admission as co-counsel in this action.

---

[7] The court notes that plaintiffs make the specious claim that the Sixth Amendment of the United States Constitution not only guarantees plaintiffs the right to counsel in a civil case, but also guarantees them the right to have "lead counsel" present at all critical stages of the litigation (#122).  The Sixth Amendment confers no such rights and pertains only to the right to assistance of counsel in a criminal proceeding. U.S. Const. Amend. XI. This argument is utterly meritless. Mr. King also relies on authority from other circuits, none of which is binding on this court; therefore, the court does not consider that legal analysis.

In the face of these repeated sanction orders, Mr. King could not manage to get reinstated prior to the settlement conference. Even if Mr. King assumed that he had somehow been reinstated, he appeared in court over one hour late for the settlement conference because he overslept. It is Mr. King – and Mr. King alone – who must answer to the plaintiffs for abdicating his responsibilities to his clients if, in fact, they relied on him as lead counsel.

What is also apparent to this court is that Mr. King never advised his clients that he had been sanctioned by this court, he never advised them that he was ordered not to appear or file any papers with the court, and he never advised them that he could not appear at the April 28, 2006 settlement conference because he had failed repeatedly to comply with this court's orders.

Mr. King utterly failed in his duty of candor to his clients regarding the circumstances that resulted in the court's orders prohibiting him from acting as counsel at the settlement conference. It is also quite clear that Mr. King, disappointed with the results of the settlement conference, set upon a course to do everything possible to undermine the settlement agreement, to attack the credibility of his co-counsel and the court, and to mislead his clients concerning the legal bases for challenging the settlement agreement.

Based upon the foregoing, this court recommends that defendants' motion to enforce settlement agreement (#117) be granted. Defendants have also asked for monetary sanctions against Mr. King for interfering with the settlement agreement, but the court denies that request, as defendants did not comply with the dictates of Fed.R.Civ.P. 11(c)(1)(A).

However, this court has chronicled the history of Mr. King's conduct in this proceeding and believes that ample cause exists for an additional recommendation that pursuant to Nevada Supreme Court Rules 99-105, Mr. King be referred by the District Court to Nevada State Bar counsel to investigate Mr. King's conduct in this action and to determine whether such conduct warrants discipline in accordance with Supreme Court Rules. *See* LR IA 10-7 (attorneys admitted to practice in the United States District Court for the District of Nevada are subject to the standards of professional conduct adopted and amended from time to time by the Nevada Supreme Court). In summary, from September

2005 through May 2006 – a period of nine months – Mr. King violated this court's Local Rules of Practice and/or this court's orders no less than sixteen times:

1. Mr. King filed discovery documents in violation of LR 26-8 (#25).
2. Mr. King filed documents with the Clerk of Court containing confidential information about minor children (# 27).
3. Mr. King failed to comply with a December 2, 2005 order directing the parties to file simultaneous briefs that were ordered to be filed by January 9, 2006 (#s 35 & 41).
4. Mr. King failed to comply with a December 2, 2005 order to submit documents for an *in camera* review no later than January 9, 2006 (#41).
5. Mr. King not only filed discovery documents in violation of LR 28-6 after a prior admonition not to do so, he attached to those discovery documents sensitive juvenile records, including the names and ages of juveniles not parties to this action. This was the second time Mr. King filed such documents, despite a direct admonition not to do so. The document was not filed under seal, and it was stricken in its entirety (#45).
6. Mr. King failed to comply with a deadline to respond to an order to show cause for repeated violations of Local Rules and court orders (#48).
7. Mr. King signed a stipulation in direct violation of a court order forbidding him to file any further papers with this court until he complied with this court's order for reinstatement (#49).
8. Mr. King arrived late to a court hearing (#53).
9. Plaintiffs' counsel electronically filed two documents with the court (#s 52-1/52-2) without signatures and these papers were later withdrawn (#53).
10. Rather than deliver his petition for reinstatement to chambers, as set forth in this court's order, Mr. King filed it with the Clerk of Court in violation of two prior orders (#65). The court ordered the improperly filed petition stricken.
11. Notwithstanding two prior orders of this court prohibiting Mr. King from filing any papers with this court until obtaining reinstatement, Mr. King filed a motion styled as a status report, motion to compel, request for discovery hearing with a District Judge, request for settlement conference, and a motion for summary judgment (#61). This paper was ordered stricken (#65).
12. For a second time, Mr. King failed to abide by this court's order to obtain reinstatement, and the court was constrained to prohibit Mr. King from filing any papers with the Clerk of Court or in making any court appearance on behalf of plaintiffs until this court issued an order reinstating Mr. King to appear (#67).
13. Mr. King filed a document purporting to be a discovery status report with the Clerk of Court under the signature of co-counsel, David Houston. However, Mr. Houston did not review the document, and it was actually a paper this court had earlier ordered stricken (#71).

14. Mr. King failed to obtain an order of reinstatement in advance of the April 28, 2006 settlement conference, yet maintained he was entitled to appear at the settlement conference on behalf of plaintiffs (#s 75/122).
15. Notwithstanding Mr. King's failure to obtain reinstatement prior to the settlement conference, he caused plaintiffs to be late to the 9:00 a.m. settlement conference because the plaintiffs were waiting for Mr. King at his office, and he failed to arrive (#75).
16. On May 1, 2006, Mr. King filed a series of documents on behalf of plaintiffs (#s 72, 73, 74, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85) prior to the issuance of an order of reinstatement, the fifth violation of this court's prior orders. The papers were ordered stricken (#87).

Mr. King's ignorance of this court's Local Rules of Practice, the Federal Rules of Civil Procedure, his repeated and flagrant violations of this court's orders, and his lack of candor to this court demonstrate a consistent pattern of conduct that fall well below the standard of practice in the District Court and as a member of the State Bar of Nevada. More troubling, however, is the disservice Mr. King has visited upon his clients who are entitled to competent representation by an attorney who represents their interests diligently and expeditiously, and who keeps them reasonably informed about the status of their case. *See* SCR 153, 154 and 171. Based upon these very serious and repeated violations, this court is constrained to recommend that Mr. King be referred to the State Bar of Nevada as more fully set forth herein.

The parties should be aware of the following:

1. They may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order, and any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

## RECOMMENDATION

For the reasons stated above, the undersigned Magistrate Judge recommends that the District Judge enter an order as follows:

1. **GRANTING** defendants' motion to enforce settlement agreement (#117); and
2. **REFERRING** Mr. King to the Nevada State Bar counsel pursuant to Nevada Supreme Court Rules 99-105 for an investigation into Mr. King's conduct in this action and to determine whether such conduct warrants discipline in accordance with Nevada Supreme Court Rules.

DATED: October 13, 2006.

_____
UNITED STATES MAGISTRATE JUDGE